**Peter W. MAIDA, Trustee, Plaintiff,**

v.

**The KROGER COMPANY, Defendant.**

**Civ. A. No. 4430.**

United States District Court
E. D. Texas,
Beaumont Division.

June 19, 1964.

George A. Weller, Marcus & Weller, Beaumont, Tex., for plaintiff.

John F. Heard, Baker, Botts, Andrews & Shepherd, Houston, Tex., for defendant.

FISHER, District Judge.

This is a suit by Peter W. Maida, Trustee, against The Kroger Company, doing business under the tradename of Henke & Pillot, a Division of The Kroger Company, for breach of a long term lease of a store building to be constructed by lessor according to certain plans and specifications to be approved by The Kroger Company. The Kroger Company agreed to pay a minimum rental of $343,200.00, payable in installments as provided in the lease contract.

The lease contract provided that lessee would furnish lessor certain drawings specifying the tenant's requirements with reference to heating, air conditioning, duct work, electrical and plumbing requirements, light fixtures, etc. The landlord was to construct the building according to plans and specifications prepared by lessor's architect which incorporated the lessee's requirements, but the lessee had the right to approve the plans and specifications.

The plaintiff contended that the defendant deliberately delayed the approval of the plans and specifications and the furnishing of details in order that the building could not be completed by October 1, 1960, as provided in the contract. Plaintiff further contended that defendant repudiated the contract by its action and conduct which had created a delay which made it impossible for the plaintiff to complete the construction within the time required by the contract.

The defendant denied it had refused to approve complete plans and specifications, and denied any deliberate or planned delay to prevent construction within the time prescribed in the lease contract. Defendant admitted that plaintiff had sought an extension of time, and denied that its agent, Deitz, had agreed to recommend that an extension of time would be granted, and likewise denied that its agent, Deitz, nor the president of Henke & Pillot Division were authorized to grant the extension of time requested. It subsequently developed that the president of the Henke & Pillot Division did have the authority to grant the extension of time, but a decision had been made prior to the date of the conference to cancel the lease contract.

Defendant further contended that on or about June 14, 1962, it had decided to accept a proposal of plaintiff to cancel the lease contract (which offer the court finds did not exist), and this was evidenced by defendant's letter to plaintiff dated June 22, 1960. Defendant likewise denied any deliberate delays of plaintiff's construction or that it formed any intention at any time not to accept the leased premises if they were constructed and tendered within the time provided in the lease contract. From time to time, after the lease was signed by The Kroger Company on or about March 3, 1960, the architect for Henke & Pillot Division would furnish to lessor's architect certain additional requirements and changes in the proposed plans and specifications. Although defendant's agent admitted the plans were substantially complete except for a few minor details on or about June 24, 1960, the defendant refused to approve the plans and specifications and would not give a partial approval with exceptions. The defendant had made a decision on or prior to June 10 and on June 14, 1960, that the lease would be canceled, and that in any event it would not agree to any extension of time for the construction of the building beyond October 1, 1960, because of its desire to cancel.

Thereafter, on or about June 24, 1960, the plaintiff conferred with the real estate manager and architect for the Henke & Pillot Division, and although the agent of defendant stated that the plans were substantially complete except for a few minor details, he failed and refused to approve the plans and failed to specify the detail on the remaining exceptions and additions which he required. On this occasion, plaintiff requested an extension of time in order that he might complete the construction in accordance with the defendant's requirements, and the defendant's agent agreed to submit and recommend the request to its Cincinnati office, representing that the President of the Henke & Pillot Division and the real estate manager did not have authority to grant such extension. Subsequently, The Kroger Company sought to induce plaintiff to accept a cancellation of the lease contract, but plaintiff refused and in good faith requested an extension of time, stating that he wanted to complete the construction within the terms of the lease and within the period as extended.

On July 8, 1960, plaintiff made a second effort to get the defendant to agree

to extend the time for completion of the construction as there was not sufficient time due to delay in approving the plans and specifications, and due to the misrepresentation that an extension would probably be granted, when, in fact, the defendant's agent knew that it would not. Thereafter, under date of July 21, 1960, the defendant advised the plaintiff that since it was obvious that he could not complete the building within the time limit set forth in the lease, he was being requested to execute a cancellation agreement. The plaintiff then elected to file suit against the defendant for damages resulting from the anticipatory breach of the contract by the defendant.

Trial of the case was before the Court without a jury, and the Court found that the evidence established a breach of contract for which the plaintiff was entitled to recover damages, which was found by the Court in the amount of $102,572.00. The judgment of the Court is based upon the findings of fact and conclusions of law which are a part of this memorandum opinion.

## FINDINGS OF FACT

### 1.

The plaintiff, Peter W. Maida, Trustee, entered into a written lease contract with The Kroger Company, effective as to landlord December 10, 1959, and as to tenant March 3, 1960, which required the construction of a building and shopping center according to plans and specifications.

### 2.

I find as a fact that the defendant did not want the contract to come into existence or to be effective, and it employed a "cat and mouse" technique over a period of time from May 11, 1960, until July 6, 1960, in an effort to delay performance by plaintiff.

### 3.

I find there was no offer open by plaintiff to defendant after May .11, 1960, to rescind or cancel the lease contract. The plaintiff wanted to carry out the contract.

### 4.

I find there was no acceptance by defendant of a prior offer of plaintiff, if any, to cancel the lease, and the plaintiff was at all times ready, able and willing to proceed with the performance of the contract after May 11, 1960.

### 5.

I find as a fact that the defendant wanted to be released from the lease contract on or about June 10, 1960.

### 6.

I find as a fact that plaintiff did nothing to delay final approval of the plans and specifications which were required to be approved by defendant before construction could be begun and completed.

### 7.

The defendant made an effort to and did delay the final approval of the plans and specifications for the purpose of delaying and finally preventing construction by plaintiff.

### 8.

I conclude as a fact that after the decision on or about June 10, 1960 to "cancel" or "get out of" the lease agreement, there was a further bad faith use of the right of The Kroger Company to approve the plans and specifications, and the right to reject the building if not completed by October 1, 1960.

### 9.

I find that defendant as late as June 24, 1960, in bad faith represented that an extension of time for performance would probably be granted to plaintiff when it knew that no extension of time would be granted, and it had no intention of granting an extension of time, because the defendant wanted "out" of the lease, and took a firm position that it had "canceled" the lease.

### 10.

I conclude as a fact that defendant and its duly authorized agents with due and

proper authority, were stalling, and trying to bring about a delay in performance by plaintiff whereby defendant could be released from this contract.

11.

I find as a fact that defendant had reached a definite decision that it would not occupy the leased premises if it was not completed by October 1, 1960, therefore attempted performance and completion after October 1, 1960, would have been to no avail and unacceptable to defendant-lessee.

12.

I conclude and find as a fact that defendant repudiated the contract by its actions, dilatory tactics, bad faith delay of final approval of plans and specifications, and bad faith actions and conduct which made it impossible for plaintiff to complete the buildings and premises within the time required under the contract, by October 1, 1960.

13.

I find as a fact that defendant after its dilatory tactics and delay in regard to plans and specifications, refused to agree to an extension of time for plaintiff to complete the buildings, and refused to make any counter offer for some period of extension to compensate for any delay brought about through its actions and misconduct.

14.

I find that plaintiff did not begin construction after defendant and its agents advised that they knew the building could not be completed by October 1, 1960, and that they accepted plaintiff's offer of a release (when there was no offer in existence), because such would have been a "foolhardy" act on the part of plaintiff, and such construction may have increased damages at a time when plaintiff was required to mitigate damages.

15.

I conclude as a fact from the facts and circumstances, conduct, statements and actions of the defendant in wanting to be released from the contract, the dilatory tactics in regard to plans and specifications, its failure to agree to an extension of time or make a counter offer of some period of time to compensate for delays brought about by its bad faith actions and conduct, and the final letter of July 22, 1960 in which defendant requested plaintiff to agree to a cancellation of the contract because it was impossible to complete the building by the expiration date of October 1, 1960, that defendant breached and repudiated its lease contract with plaintiff first on or about June 14th, June 24th, 1960, and on July 6, 1960, and finally on July 22, 1960.

16.

I find as a fact that plaintiff, Peter W. Maida, Trustee, made a good faith offer to complete the building and contract after the initial breach and repudiation, provided a reasonable extension of time for performance was granted, but defendant rejected such good faith offer, and plaintiff then sued for damages for repudiation and breach of contract.

Findings of Fact as to Damages

17.

I find as a fact that the present value of the rent during the period of the lease, plus the present value of the improvements and land at the expiration of the lease, less the cost of the land and the construction of the building, including maintenance and care during the period of the lease is the sum of $180,695.00.

18.

I further find that an alternative method of arriving at the measure of damages for the anticipatory breach of a long term lease contract of a shopping center is the market value of the shopping center, which is ten times the annual gross rental, which is in this case $415,080.00, less the cost of the property with improvements, plus the sales price of real estate, being a total of $312,408.00, leaving a net value of $102,572.00. In arriving at the amount of dam-

ages, the Court has excluded the $20,000.-00 claimed as a loss on the sale of a filling station site.

### 19.

I find and conclude as a fact that plaintiff has suffered damages in the sum of $102,572.00, which he is entitled to recover of and from the defendant, The Kroger Company.

### 20.

In using the word "plaintiff" in the findings of fact, it is the intent of the Court to include the plural since Peter W. Maida and Joel L. Barnett were beneficial owners of Peter W. Maida, Trustee.

I make the following Conclusions of Law:

### 1.

I conclude as a matter of law there existed an implied promise in the contract on the part of the defendant not to prevent or hinder performance by the plaintiff, lessor; and defendant could not take advantage of an obstacle to performance which it had created—and which it could have cured by agreement to extend time of completion.

### 2.

I conclude as a matter of law that the defendant, The Kroger Company, breached and repudiated its lease contract with plaintiff, Peter W. Maida, Trustee, on or about June 14th, June 24, 1960, and July 6, 1960.

### 3.

I conclude as a matter of law that plaintiff made a good faith offer to defendant, after the breach and repudiation, to complete the building and to perform the contract provided defendant would approve the plans and specifications and agree to a reasonable extension of time for construction, and such effort to effect performance was rejected by defendant, and the contract was forever breached and repudiated by the defendant on or about July 22, 1960.

### 4.

I conclude as a matter of law that a deliberate effort on the part of The Kroger Company, and its duly authorized agents, existed to compromise the probability of performance by plaintiff, Peter W. Maida, Trustee, by a course of action, the effect of which was to repudiate the contract. Such repudiation and breach was accepted by plaintiff, who sued for damages for the breach of contract.

### 5.

I conclude as a matter of law that plaintiff accepted the defendant's breach and repudiation of the contract on or about July 8, 1960, but attempted to have defendant to commit itself to an extension of time for construction and acceptance, which offer was finally rejected on July 22, 1960. Thereafter, plaintiff sued for damages for breach and repudiation of the contract.

### 6.

I conclude as a matter of law that the proper measure of damages would be the profits the plaintiff stood to make from the lease, discounted to its present value.

Conclusion of Law as to Damages

### 7.

I conclude as a matter of law that either the sum of $180,695.00 or $102,572.00 would be a correct measure of damages for breach of the contract by the defendant in this case, but the Court adopts the more conservative figure of $102,572.00 as the amount of damages to be awarded plaintiff, Peter W. Maida, Trustee, against the defendant, The Kroger Company, in this cause.

I further conclude that plaintiff is entitled to interest on said damages at six (6%) per cent from July 22, 1960.

### 8.

The Court concludes as a matter of law that plaintiff was justified in not proceeding with construction of the

building after it became obvious that defendant had breached the contract and did not intend to occupy the building, because plaintiff was under a duty to mitigate damages.

### 9.

The burden was on the defendant to offer evidence of plaintiff's failure to mitigate damages, and since no evidence was offered by defendant as to mitigation, plaintiff discharged his duty to defendant.